Fort Worth & Rio Grande Railway Company v. W. I. Bowen.

Decided May 10, 1902.

1.—Railroads—Injury to Brakeman—Negligence of Conductor.

Where a brakeman was, in the discharge of his duty, extracting a coupling pin from the drawhead of a car, and was injured by other cars behind him being backed against him noiselessly and without signals, and his situation and peril were in plain view of the conductor who was signaling the moving train, the jury were warranted in concluding that the injury was due to the negligence of the conductor, and that there was no contributory negligence on the brakeman's part.

2.—Damages—Personal Injury—Verdict Not Excessive.

A verdict for $7250 in favor of an experienced railroad brakeman, 30 years old, and earning $60 to $125 per month, for an injury causing the loss of nearly all his right hand, and attended with much pain and suffering, is held not excessive.

Appeal from the District Court of Tarrant County. Tried below before Hon. M. E. Smith.

*N. H. Lasiter* and *Rob't Harrison,* for appellant.

*Carlock & Gillespie,* for appellee.

HUNTER, Associate Justice.—This is a suit for personal injuries inflicted on a. brakeman by the alleged negligence of the conductor, who saw his hand in a perilous position on a drawhead while trying to pull a pin, and failed to signal the engine to stop or warn the plaintiff of the near approach of the ·car. The brakeman's hand was mashed and ·mutilated. The defenses were general denial, assumed risk, and contributory negligence. The jury gave a verdict against appellant for $7250, upon which judgment was rendered, and hence this appeal.

The material facts are that the appellee was in the employment of appellant as a freight train brakeman, and was earning at the time

about from $60 to $125 per month. The injury to appellee is described by him as follows, which evidence we adopt as conclusions of fact: "I never had any injury to my hand before. This time it was mashed from the back pretty near to the wrist bone. The thumb was bruised, and the first and second fingers were just hanging, and the finger next to the little one was mashed badly; the bone stuck out through the glove, and the little finger was mashed so I can't straighten it now, but you can force it straight, and it has no motion except sideways. I can not move the thumb backwards, but can move it forwards. I was brought to Fort Worth, reaching there the next morning, where Drs. Field and Duringer amputated my fingers, leaving my hand in its present condition. It was very painful, and it is not fully easy yet, and is always bothering me, and the least bit of cold weather will cause it to bother me. I have no use at all of the hand, but can catch the thumb and little finger together, and can hold tight enough to cut meat with, but it is pretty hard to convey it to my mouth, because I can't turn it sufficiently. I am right-handed. At the time I was hurt my wages would vary from $60 to $125 per month. The average wages of a brakeman are from $90 to $110, but I am unable to do work of that kind now. My intention was to follow the railroad business. I was unable to fire an engine, either, with that hand. I have not earned any wages at all since I was hurt. I have not sufficient education to get a job, and have been hustling. I am not able to make a living as a printer now. I know nothing now to which I can turn my hand to make a living except odd jobs, and I will take anything I can get from now on. My hand is very much disfigured."

The plaintiff was 30 years old; he had had six or eight years experience as a railroad man, and his injuries were permanent and serious. They occurred at Bluffdale, Erath County, Texas, and the evidence warranted the jury in concluding that they were caused by the negligence of the conductor of the train, as alleged, who was standing within ten or twelve feet of plaintiff when it occurred, signaling the engineer to back the train so as to couple to another car. It was night, and the plaintiff was standing at the drawhead of the car trying to draw the pin, which was fast for some reason, and could not be raised out by the use of the lever. He was knocking and beating the pin with a stone trying to loosen it; his back was towards the approaching train, which was moving noiselessly without ringing the bell or blowing the whistle. The evidence warranted the jury in concluding that the conductor saw the plaintiff's perilous position when he signaled the engine to move back and when the back end of the train was fifty feet from plaintiff, and until it was within ten or twelve feet of him. Plaintiff did not see the car as it approached him and did not know of its approach, and, being absorbed in his efforts to loosen the pin, and not expecting the train to move back upon him, was not watching for it. The evidence warranted the conclusion that he was doing his duty at the time of the injury and was not guilty of contributory negligence.

We are unable to say that the amount of damages found by the jury is excessive.

The transcript in this case contains fifty-two assignments of error, forty of which are briefed. Twenty-two complain of the admission and exclusion of evidence, eight to the refusal to give special charges, and seven to the charge of the court, and the rest complain of the verdict. We have examined them all carefully, and overrule them.

Among the assignments was one relating to the charge of the court, defining the duty of the conductor after he discovered the negligence of the brakeman and his peril, which we certified to our Supreme Court, and that court having answered the question of law involved against the contention of the appellant (95 Texas, 364), which answer we adopt as the judgment of this court, we overrule that assignment, and order that the judgment of the District Court be in all things affirmed.

*Affirmed.*